**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

PETER ANTONIO RODRIGUEZ,

   Petitioner,

                                    CASE NO. 2:11-CV-14903

v.                               HONORABLE ARTHUR J. TARNOW
                                  UNITED STATES DISTRICT JUDGE

KENNETH MCKEE,

    Respondent.

_____/

**OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS, (2) A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

Peter Antonio Rodríguez, ("Petitioner"), presently incarcerated at the Newberry Correctional Facility in Newberry, Michigan, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.   In his application, petitioner challenges his conviction and sentence of (1) conspiracy to commit armed robbery, Mich. Comp. Laws § 750.157a, and (2) armed robbery, Mich. Comp. Laws § 750.529.  For the reasons stated below, the petition for writ of habeas corpus is DENIED.

**I. Background**

Petitioner was convicted of the above offenses following a jury trial in the Jackson County Circuit Court.  This Court recites the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

1

*Rodriguez v. McKee,* 11-CV-14903

Near midnight on the night of November 21, 2007, the day before
Thanksgiving, defendant drove Josh Lay, Antwone Russ, and Antwon
Baker to Polly's Country Market grocery store in Jackson, Michigan.
Defendant left the three men in the parking lot of the grocery store, and
drove away. Lay, Russ and Baker entered and robbed the store while armed
with BB guns. They then left the store and walked to a parking lot of an
adjacent apartment complex, where defendant picked them up. All four men
and defendant's daughter, Jodie Rodríguez, were arrested for armed robbery
and conspiracy to commit armed robbery. Before trial, Lay, Russ, and
Baker pleaded guilty to one count of armed robbery in exchange for their
testimony against defendant and Jodie, who were tried together. Defendant
was convicted and Jodie was acquitted.

....................................................................................................................

There was competent testimony that Lay went to defendant's home
approximately one hour before the robbery, where he obtained a BB gun
and back pack. Baker, Ruff and Lay each testified that defendant drove Lay
to Polly's and picked up Ruff and Baker along the way, with Baker sitting
in the backseat with the BB gun on his lap. Ruff testified that it was
defendant's idea to wait for them in the adjacent apartment parking lot after
the robbery. Lay's testimony supported that defendant was aware of the
plan to rob the grocery store, and that they would use BB guns.

*People v. Rodriguez*, No. 290599, * 1-2 (Mich.Ct.App. June 24, 2010).

Petitioner's conviction was affirmed on appeal. *Id*., *lv. den*. 488 Mich. 1038,

NW2d (2011); reconsideration denied, 489 Mich. 937 (2011).

Petitioner now seeks a writ of habeas corpus on the following grounds:

I. There is legally insufficient evidence in this record to support petitioners
(sic) convictions in this cause in violation of due process of law. US
CONST AM VI, XIV.

II. Several instances of prosecutorial misconduct deprived defendant of a
fair trial contrary to the due process clause of the United States
Constitution.

III. Several instances of ineffective assistance of counsel deprived

2

*Rodriguez v. McKee,* 11-CV-14903

defendant of a fair trial contrary to the due process clause of the United States Constitution.

IV. Defendant was denied due process and a fair trial where the trial court would not allow him to impeach a witness with a pending UDAA charge.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably

3

*Rodriguez v. McKee,* 11-CV-14903

applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III.  Discussion

**A.  Claim # 1.  Sufficiency of the Evidence.**

Petitioner first contends that he should not have been convicted of armed robbery or conspiracy to commit armed robbery because he was not involved in the planning or commission of the robbery, did not enter the store nor take part in anything that transpired inside the store during the robbery, and did not transport the three robbers to and from the

4

*Rodriguez v. McKee,* 11-CV-14903

store.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19(internal citation and footnote omitted)(emphasis in the original). Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt. *Johnson v. Coyle*, 200 F. 3d 987, 992 (6th Cir. 2000)(internal quotations omitted).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011). "Because rational people

5

*Rodriguez v. McKee,* 11-CV-14903

can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*  In fact, the *Jackson* standard "is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis v. Lafler*, 658 F. 3d 525, 534 (6th Cir. 2011)(quoting *United States v. Oros*, 578 F.3d 703, 710 (7th  Cir. 2009)(internal quotation marks omitted)).  Therefore, for a federal habeas court reviewing the sufficiency of evidence for a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992).  A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir.2003).

 The elements of armed robbery under Michigan law are: (1) an assault, and (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon. *See O'Guin v. Foltz*, 715 F. 2d 397, 400 (6th Cir. 1983).

6

*Rodriguez v. McKee,* 11-CV-14903

Under Michigan law, a conspiracy is defined as "a mutual agreement or understanding, express or implied, between two or more persons to a commit a criminal act." *Cameron v. Birkett*, 348 F. Supp. 2d 825, 839 (E.D. Mich. 2004)(quoting *People v. Carter*, 415 Mich. 558, 567; 330 N.W.2d 314 (1982)). "[A] two-fold specific intent is required for conviction: intent to combine with others, and intent to accomplish the illegal objective." *Carter*, 415 Mich. at 568. Direct proof of an agreement is not required, nor is proof of a formal agreement necessary. Rather, it is sufficient that the circumstances, acts, and conduct of the parties establish an agreement. *People v. Cotton*, 191 Mich. App. 377, 393; 478 N. W. 2d 681 (1991). A conspiracy may be proven by circumstantial evidence or may be based on inference. *Id.*

Petitioner does not contest the elements of the charged offenses but argues that there was insufficient evidence to convict him of aiding and abetting his co-defendants in the commission of these crimes.

To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

1. the crime charged was committed by the defendant or some other person;

2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and

3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

7

*Rodriguez v. McKee,* 11-CV-14903

*Riley v. Berghuis*, 481 F. 3d 315, 322 (6th Cir. 2007)(citing *People v. Carines*, 460 Mich. 750, 757-58; 597 N.W. 2d 130 (1999)).

In order to be guilty of aiding and abetting under Michigan law, the accused must take some conscious action designed to make the criminal venture succeed. *See Fuller v. Anderson*, 662 F. 2d 420, 424 (6th Cir. 1981). Aiding and abetting describes all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which might support, encourage, or incite the commission of the crime. *People v. Turner*, 213 Mich. App. 558, 568; 540 N. W. 2d 728 (1995). The quantum or amount of aid, advice, encouragement, or counsel rendered, or the time of rendering, is not material if it had the effect of inducing the commission of the crime. *People v. Lawton*; 196 Mich. App. 341, 352; 492 N. W. 2d 810 (1992). Finally, the Michigan Supreme Court has held that there is no language in Michigan's aiding and abetting statute that shows an intent by the Michigan Legislature "to abrogate the common-law theory that a defendant can be held criminally liable as an accomplice if: (1) the defendant intends or is aware that the principal is going to commit a specific criminal act; or (2) the criminal act committed by the principal is an 'incidental consequence[ ] which might reasonably be expected to result from the intended wrong.'" *People v. Robinson*, 475 Mich. 1, 9; 715 N.W. 2d 44 (2006)(quoting Perkins, Criminal Law (3d ed.), pp. 741-43, 745).

To be convicted of aiding and abetting, the defendant must either possess the required intent to commit the crime or have participated while knowing that the principal

8

*Rodriguez v. McKee,* 11-CV-14903

had the requisite intent; such intent may be inferred from circumstantial evidence. *See Long v. Stovall*, 450 F. Supp. 2d 746, 753 (E.D. Mich. 2006); *People v. Wilson*, 196 Mich. App. 604, 614; 493 N. W. 2d 471 (1992). The intent of an aider and abettor is satisfied by proof that he knew the principal's intent when he gave aid or assistance to the principal. *People v. McCray*, 210 Mich. App. 9, 14; 533 N. W. 2d 359 (1995). An aider and abettor's state of mind may be inferred from all of the facts and circumstances, including close association between the defendant and the principal, the defendant's participation in the planning and execution of the crime, and evidence of flight after the crime. *Turner*, 213 Mich. App. at 568-69.

Mere presence, even with knowledge that a crime is being committed, is insufficient to establish that a defendant aided and abetted in the commission of the offense. *People v. Norris*, 236 Mich. App. 411, 419-20; 600 N. W. 2d 658 (1999); *Fuller v. Anderson*, 662 F. 2d at 424. "[H]owever, a claim of mere presence is not a 'catch-all excuse' to defeat an inference of guilt beyond a reasonable doubt. In evaluating a 'mere presence' defense, a factfinder must distinguish, based upon the totality of the circumstances, between one who is merely present at the scene and one who is present with criminal culpability." *See Long v. Stovall*, 450 F. Supp. at 754 (internal citation omitted). An aider and abettor who is intentionally present during the commission of a crime may be silent during the crime's commission, "but by his demeanor, or through behavior and acts not directly related to the crime, provide 'moral support' that is

9

*Rodriguez v. McKee,* 11-CV-14903

recognizable to, and relied upon by, the principal.  Such acts may be silent and may not be overt but may still amount to more than 'mere' presence." *Sanford v. Yukins*, 288 F. 3d 855, 862 (6th Cir. 2002).  Michigan's "broad definition" of aiding and abetting "easily encompasses situations where the alleged aider and abettor, although silent and not committing acts directly related to the crime, was not 'merely' present, but providing emotional encouragement and support." *Id*.

As the Michigan Court of Appeals indicated in rejecting petitioner's sufficiency of evidence claim, *See Rodriguez*, Slip. Op. at * 1, there was sufficient evidence presented at trial to establish that Co-Defendant Lay went to petitioner's house one hour before the robbery and obtained a BB gun and backpack.  Co-Defendant Antwon Baker, held his gun on his lap while petitioner drove the car.  Co-Defendants Baker, Ruff and Lay each testified that petitioner drove Lay to the store, picking up Ruff and Baker along the way.  Furthermore, Ruff testified that it was petitioner's idea to wait for them in the adjacent apartment parking lot after the robbery.  *Id.* * 2.

In light of the evidence presented in this case, the Michigan Court of Appeals did not unreasonably apply clearly established federal law in determining that the evidence was sufficient to convict petitioner of armed robbery and one count of conspiracy to commit armed robbery on an aiding and abetting theory. *See Brown v. Konteh*, 567 F. 3d 191, 209-12 (6th Cir. 2009).  In particular, "in light of the strong circumstantial evidence" that petitioner "was involved in the planning and execution of" these crimes, "at least one

10

*Rodriguez v. McKee,* 11-CV-14903

'rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt.'" *Davis v. Lafler*, 658 F. 3d 525, 535 (6th Cir. 2011)(quoting *Jackson v. Virginia*, 443 U.S. at 319 (additional citation omitted). Moreover, when petitioner's case is reviewed pursuant to the AEDPA's "double deference" standard, this Court is unable to state that the Michigan Court of Appeals' decision that there was sufficient evidence to convict petitioner of armed robbery and conspiracy was "so far out of line with the very general standard set forth in *Jackson v. Virginia* as to warrant granting [petitioner] habeas relief." *Id.*

The Michigan Court of Appeals' determination that there was sufficient evidence to support petitioner's convictions for armed robbery and conspiracy to commit armed robbery was not an unreasonable application of clearly established federal law, so as to entitle petitioner to habeas relief on his first claim. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 480-81 (6th Cir. 2006).

**B. Claim # 2. The prosecutorial misconduct claims.**

Petitioner next contends that he was denied a fair trial because of prosecutorial misconduct.

Respondent argues that petitioner's prosecutorial misconduct claims are procedurally defaulted because petitioner failed to preserve the issues at trial.

This Court notes that procedural default is not a jurisdictional bar to the review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). In addition,

11

*Rodriguez v. McKee,* 11-CV-14903

"[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Petitioner's third claim alleges that his trial counsel was ineffective for failing to object to the instances of prosecutorial misconduct alleged in his second claim. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of the claims. *See Cameron v. Birkett*, 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if

12

*Rodriguez v. McKee,* 11-CV-14903

the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45. The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F. 3d 1348, 1355 (6th Cir. 1993)). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*, 131 S. Ct., at 786–87). This is particularly so, "because the *Darden* standard is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations[,]'". *Id*. (quoting *Yarborough v. Alvarado*, 541 U.S. at 664).

Petitioner first claims that the prosecutor deprived him of a fair trial by bringing to the attention of the jury that his three co-conspirators agreed to testify in exchange for a plea deal.

Although petitioner claims that the prosecutor improperly brought to the attention of the jury that petitioner's co-defendants agreed to testify in exchange for a plea deal, the prosecutor had the right to bring out this information. "Guilty pleas may be elicited by the prosecutor on direct examination so that the jury may assess the credibility of the witness." *See United States v. Benson*, 591 F.3d 491, 499 (6th Cir. 2010). The Michigan

13

*Rodriguez v. McKee,* 11-CV-14903

Court of Appeals also denied petitioner's claim finding:

> When an accomplice testifies, defense counsel or the prosecutor can inform
> the jury that the testimony was secured by way of a favorable plea
> agreement with the prosecutor.  If defense counsel does not want evidence
> of the plea agreement to be introduced at trial, he must object before the
> prosecutor attempts to elicit the testimony from the accomplice on direct
> examination.  However, if defense counsel chooses not to object, and
> instead cross-examines the accomplice about the plea agreement to
> undermine his credibility, that defendant cannot then argue on appeal the
> introduction of the plea agreement prejudiced him at trial. . . . Here, defense
> counsel did not object to the testimony at issue, but instead used the plea
> agreements to impeach the credibility of each accomplice on
> cross-examination and during closing argument.

*Rodriguez*, Slip Op * 3 (internal citations omitted).

By choosing not to object to the introduction of the plea agreement and deciding to

challenge the credibility of the co-defendants, petitioner cannot now argue that

introduction of the plea agreement constituted error.

Petitioner next contends "that the prosecutor impermissibly vouched for the

credibility of Lay, Baker, and Ruff when she elicited statements from each that they were

testifying truthfully as a condition of their plea agreement."

A prosecutor may not express a personal opinion concerning the guilt of a

defendant or the credibility of trial witnesses, because such personal assurances of guilt or

vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate

advocates' role by improperly inviting the jurors to convict the defendant on a basis other

than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d

14

*Rodriguez v. McKee,* 11-CV-14903

731, 737 (6th Cir. 1999)(internal citations omitted).  The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F. 2d 1277, 1283 (6th Cir. 1987).  "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis*, 170 F. 3d 546, 550 (6th Cir. 1999)(internal citations omitted).  It is worth noting, however, that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins*, 209 F. 3d 486, 537 and n. 43 (6th Cir. 2000).  Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey*, 287 F.3d 422, 433 (6th Cir. 2002).

The record reflects that the witnesses testified pursuant to a plea agreement. The proposed testimony was introduced within opening argument to inform the jury as to what the assistant prosecutor proposed to show and later reintroduced in closing argument to show that a witness should be believed after their credibility was attacked by opposing counsel. The prosecutor also indicated that "We stated from the very beginning this was going to be an issue of credibility, who do you believe?" (Tr. 1/7/2009,  p. 125). The questions and comments did not amount to improper vouching, because they merely

15

*Rodriguez v. McKee,* 11-CV-14903

encompassed the terms of the co-defendants' plea agreements with the state and the testimony given at trial. *See United States v. Trujillo*, 376 F. 3d 593, 608-09 (6th Cir. 2004); *See also United States v. Owens*, 426 F. 3d 800, 806-07 (6th Cir. 2005).

Furthermore, the trial court admonished the jury that what the lawyers said in closing argument was not evidence. (Tr. 1/7/2009, p. 193). The prosecutor herself acknowledged that the jury was to use reason and common sense when looking at the testimony from the witnesses. (*Id.* at 183-184). The prosecutor conceded that it was the jury's domain to determine the witnesses' credibility. (*Id.* at 125). Finally, at the conclusion of the closing arguments, the trial court again advised the jury that the lawyers' opening statements and closing arguments were not evidence. The court further admonished the jurors to scrutinize any promises made and any reasons to tell the truth or lie. (Id. at 195). The trial court also instructed the jurors about the factors that they should use to evaluate the credibility of the witnesses *(Id.* at 125).

Any alleged vouching for the credibility of witnesses did not rise to the level of a due process violation, in light of the fact that the jury was informed by both the prosecutor and the judge that the prosecutor's arguments were not evidence and the judge instructed jury as to the factors to consider in evaluating the credibility of the witnesses' testimony. *Byrd*, 209 F. 3d at 537-38. Moreover, because the prosecutor also conceded in her closing argument that the witnesses' credibility was for the jury to determine, any improper vouching did not render the trial fundamentally unfair. *See Shacks v. Tessmer*, 9

16

*Rodriguez v. McKee,* 11-CV-14903

Fed. Appx. 344, 349-50 (6th Cir. 2001).

Moreover, as the Michigan Court of Appeals noted, when viewed in the context of the entire closing argument, the prosecutor's remarks on the credibility of the witnesses were based on the evidence presented at trial and did not suggest that the prosecutor had any special knowledge of the truth that was unknown to the jury. The prosecutor's remarks did not amount to improper vouching, because the prosecutor was merely pointing out various discrepancies between the co-defendant's testimony and petitioner's testimony. *See U.S. v. Rankin*, 1 Fed. Appx. 389, 394 (6th Cir. 2001).

Petitioner next contends that the prosecutor called Detective Timothy Schlundt for the sole purpose of vouching for Ruff's credibility. The record reflects that defense counsel impeached Ruff on cross-examination when Ruff testified that he did not have a clear memory of the events of the robbery. The prosecution then recalled Schlundt to rehabilitate the witness. The Michigan Court of Appeals held that it was proper to recall Detective Schlundt in order to rehabilitate Ruff's testimony after his credibility had been attacked by defense counsel. *Rodriguez*, Slip. Op. at * 4.

Although petitioner has framed his claim about Detective Schlundt's testimony as a prosecutorial-misconduct challenge, "it amounts in the end to a challenge to the trial court's decision to allow the introduction of this evidence." *Webb v. Mitchell*, 586 F. 3d 383, 397 (6th Cir. 2009). The Michigan Court of Appeals determined that it was proper for the prosecutor to recall Detective Schlundt to rehabilitate Ruff's testimony after the

17

*Rodriguez v. McKee,* 11-CV-14903

latter's credibility had been attacked by defense counsel. "A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008). Furthermore, it is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id*. Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker*, 224 F. 3d 542, 552 (6th Cir. 2000). Petitioner's claim that the prosecutor improperly vouched for the credibility of the witness by recalling Detective Timothy Schlundt to rehabilitate Ruff did not amount to vouching for Ruff's credibility; therefore, petitioner's claim is not cognizable in a federal habeas corpus proceeding. *See e.g Roland v. Mintzes*, 554 F. Supp. 881, 890 (E.D. Mich. 1983).

Petitioner also alleges that the prosecutor distorted the time-line testimony by arguing that petitioner's version of the events as they occurred was inconsistent with other facts found in the record. Petitioner points to the following comments by the prosecutor:

> Peter Rodríguez cannot physically be in the Concord Apartments parking lot picking up three people who admit that they had just robbed Polly's at 12:30 when officers are on the scene at 12:22.

18

*Rodriguez v. McKee,* 11-CV-14903

(Tr. 1/7/2009, pp. 127-128).

The Michigan Court of Appeals found that the prosecutor was merely arguing from the facts that supported her case in chief and misspoke when giving reference to the time of petitioner's presence in the parking lot. *Rodriguez*, Slip Op. at 4.  The Michigan Court of Appeals further concluded that the statement contained poor syntax, not that the prosecutor intended to distort the timeline by alleging the store had been robbed at 12:30. The statement should have indicated that petitioner was in the parking lot of the Concord Apartments at 12:30 picking up his co-defendants. *Id.,* at * 4, n. 2

Poor syntax does not constitute a distortion of the timeline.  Prosecutors must be given leeway to argue reasonable inferences from the evidence. *Byrd v. Collins*, 209 F. 3d at 535.

Petitioner's last prosecutorial misconduct claim alleges that the prosecutor presented perjured testimony.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972); *See also Anderson v. Jackson*, 567 F. Supp. 2d 973, 981 (E.D. Mich. 2008).  There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959)(internal citations omitted).  To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant

19

*Rodriguez v. McKee,* 11-CV-14903

must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell,* 161 F. 3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins,* 209 F. 3d at 517-18.

Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *Coe,* 161 F. 3d at 343. Additionally, the fact that a witness contradicts himself or herself or changes his or her story also does not establish perjury either. *Malcum v. Burt,* 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003)(citing *Monroe v. Smith,* 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)). A habeas petition should be granted if perjury by a government witness undermines the confidence in the outcome of the trial. *Id.*

Petitioner has failed to establish that the witnesses committed perjury. Petitioner claims that Deputy Kirk Douglas Carter and Lay provided false testimony, yet "the record indicates that both witnesses testified consistently and nothing indicates that the prosecutor 'knowingly use[d] false testimony to obtain a conviction.'" *Rodriguez,* Slip Op. at 4. Furthermore, Lay's testimony that petitioner participated in the robbery is supported by the record that petitioner was the driver and received some of the money afterwards. Petitioner has failed to show that Carter and Lay testified falsely or that the

20

*Rodriguez v. McKee,* 11-CV-14903

prosecutor knew that Carter and Lay had testified falsely. *See Rosencrantz v. Lafler*, 568 F. 3d 577, 587 (6th Cir. 2009). Petitioner is not entitled to habeas relief on his perjury claim.

### C. Claim # 3. Ineffective assistance of trial counsel.

Petitioner's third claim alleges that he was denied the effective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland*, 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "*Strickland's* test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379

21

*Rodriguez v. McKee,* 11-CV-14903

(6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Petitioner first claims that trial counsel was ineffective for failing to object to the instances of prosecutorial misconduct that he raised in his second claim.

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001). Because the Court has already determined that the prosecutor's comments did not deprive petitioner of a fundamentally fair trial, petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *See Slagle v. Bagley,* 457 F. 3d 501, 528 (6th Cir. 2006).

Petitioner next contends that trial counsel was ineffective for failing to investigate the time line as to the police officers' arrival at the crime scene and their subsequent investigation procedures, or whether Josh Lay had four driving citations.

Petitioner failed to provide any evidence either to the state courts or to this Court to establish that any of this evidence would have been exculpatory. Conclusory

22

*Rodriguez v. McKee,* 11-CV-14903

allegations of ineffective assistance of counsel, without any evidentiary support, do not

provide a basis for habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998).

By failing to present any evidence to the state courts in support of his ineffective

assistance of claim, petitioner is not entitled to relief on his ineffective assistance of

counsel claim with this Court. *See Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir.

2002)(citing 28 U.S.C. § 2254(e)(2)(A)(ii)).

Petitioner also claims that counsel was ineffective failing to argue better for

admission of UDAA charge to impeach a witness. Counsel, did, in fact, argue for the

admission of the UDAA charge, but did not prevail. Petitioner's ineffective assistance

"relates to defense counsel's failure to achieve substantive results rather than a failure to

file procedural motions." *Mason v. Mitchell*, 320 F. 3d 604, 617 (6th Cir. 2003).

"However, *Strickland's* objective standard of reasonableness does not require lawyers to

be perfect." *Id.*

Finally, petitioner contends that counsel was ineffective for failing to request a

jury instruction on "mere presence" or for failing to object to the sentencing guidelines.

Although petitioner alleges counsel was ineffective for failing to object to lack of

instruction or miscoring of guidelines, the instruction was given and the guidelines were

correctly scored. *Rodriguez,* Slip. Op. at * 7. Trial counsel was not ineffective for failing

to raise a futile objection. *See U.S. v. Johnson*, 9 Fed.Appx. 373, 374 (6th  Cir.

2001)(citing *McQueen v. Scroggy*, 99 F.3d 1302, 1328 (6th Cir. 1996)). Petitioner is not

23

*Rodriguez v. McKee,* 11-CV-14903

entitled to habeas relief on his third claim.

### D. Claim # 4. Impeachment of witness with pending UDAA charge.

Petitioner's fourth claim alleges that he was denied a fair trial when the judge failed to allow him to impeach a witness with a pending UDAA charge.

"[T]he Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, that the defendant might wish.'" *United States v. Owens*, 484 U.S. 554, 559 (1988)(internal quotations omitted). The Confrontation Clause of the Sixth Amendment does not prevent a trial judge from imposing limits on a defense counsel's inquiry into potential bias of a prosecution witness; to the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, a witness' safety, or interrogation that is repetitive or only marginally relevant. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

Trial counsel successfully impeached defendant Lay. He first brought out that Lay had recruited both defendants Ruff and Baker (Tr. 1/6/2009, p. 51). Counsel then brought out the discrepancy between what Lay had said that he had taken and what the store was missing. ( *Id.* at 61-62) and that Lay failed to mention Ruff's name when first talking to the police. (*Id.* at 64). Furthermore, Petitioner claimed that Lay merely testified to what the prosecutor wanted to hear so that he could receive a lower sentence. (Tr. 1/7/2009, p.

24

*Rodriguez v. McKee,* 11-CV-14903

174). In light of the fact that testimony regarding a pending UDAA charge would have

been cumulative to other impeachment evidence, allowing counsel to impeach Lay with

the UDAA charge did not violate petitioner's right to confrontation or his right to present

a defense. *See Washington v. Renico*, 455 F.3d 722, 728-29 (6th Cir. 2006).  Petitioner is

not entitled to relief on his fourth and final claim.

### IV.  A Certificate of Appealability

A habeas petitioner must receive a certificate of appealability ("COA") in order to

appeal the denial of a habeas petition for relief from either a state or federal conviction. [1]

28 U.S.C. § 2253(c)(1)(A), (B).  A court may issue a COA "only if the applicant has

made a substantial showing of the denial of a constitutional right." 28 U.S.C. §

2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the

substantial showing threshold is met if the petitioner demonstrates that reasonable jurists

would find the district court's assessment of the constitutional claim debatable or wrong.

*See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard

by demonstrating that ... jurists could conclude the issues presented are adequate to

deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327

(2003).  In applying this standard, a district court may not conduct a full merits review,

---

[1]  Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

*Rodriguez v. McKee,* 11-CV-14903

but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

The Court will deny a certificate of appealability, because jurists of reason would not find the Court's resolution of the claims to be debatable.

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v. Youngblood*, 116 F. 3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V. Conclusion

For the reasons stated above, this Court concludes that Petitioner Rodríguez is not entitled to federal-habeas relief on the claims presented in his petition.

26

*Rodriguez v. McKee*, 11-CV-14903

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is

**DENIED WITH PREJUDICE**. (Dkt.# 1).

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner will be granted leave to appeal *in
forma pauperis.*


                        s/Arthur J. Tarnow                                    
                        Arthur J. Tarnow
                        Senior United States District Judge

Dated:  May 27, 2014

I hereby certify that a copy of the foregoing document was served upon parties/counsel of
record on May 27, 2014, by electronic and/or ordinary mail.

                        s/Catherine A. Pickles                                 
                        Judicial Assistant

27